**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| OBED MORONI CARRILLO CRUZ, Individually and On Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| ANNOVIS BIO, INC., MARIA MACCECCHINI, and JEFFREY MCGROARTY, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Obed Moroni Carrillo Cruz ("Plaintiff"), individually and on behalf of all others similarly situated, by and through Plaintiff's attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge.  Plaintiff's information and belief is based upon, among other things, the investigation by Plaintiff's counsel, which includes without limitation: (a) review and analysis of regulatory filings made by Annovis Bio, Inc. ("Annovis" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued and disseminated by Annovis; and (c) review of other publicly available information concerning Annovis.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Annovis securities between May 21, 2021 and July 28, 2021, inclusive (the "Class Period").  Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Annovis is a clinical stage pharmaceutical company that is developing therapies addressing neurodegeneration, such as Alzheimer's disease ("AD"), Parkinson's disease ("PD"), and Alzheimer's disease in Down syndrome ("AD-DS").  Its lead compound is ANVS401 (Posiphen), an orally administrated drug which purportedly inhibited the synthesis of neurotoxic proteins that are the main cause of neurodegeneration.

3.      At all relevant times, the Company was conducting two Phase 2a clinical studies. The trial conducted in collaboration with the Alzheimer's Disease Cooperative Study ("ADCS") examines twenty-four early AD patients (the "ADCS Trial"), whereas the AD/PD trial examines fourteen AD and fifty-four PD patients.  Both are double-blind, placebo-controlled studies and were purportedly designed to measure not only target, but also pathway validation in the spinal fluid of patients.  Annovis stated that if it could show both target and pathway validation in two patient populations, it "believe[d] that [its] opportunity for successful Phase 3 studies is better than if we merely demonstrated target validation in one patient population."

4.      On July 28, 2021, after the market closed, Annovis reported interim clinical data from its Phase 2a trial.  Among other things, the Company reported that AD patients twenty-five days after treatment failed to show statistically significant improvement compared to the placebo. Annovis also reported that, although patients showed cognitive improvements in certain areas, the results were not statistically significant.

5.      On this news, the Company's share price fell $65.94, or 60%, to close at $43.50 per share on July 29, 2021, on unusually heavy trading volume.

6.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that

2

Annovis's ANVS401 did not show statistically significant results across two patient populations as to factors such as orientation, judgement, and problem solving; and (2) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  In addition, the Company's principal executive offices are in this District.

11.      In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the U.S. mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

12.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Annovis securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13.     Defendant Annovis is incorporated under the laws of Delaware with its principal executive offices located in Berwyn, Pennsylvania.  Annovis's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "ANVS."

14.     Defendant Maria Maccecchini ("Maccecchini") was the Company's Chief Executive Officer at all relevant times.

15.     Defendant Jeffrey McGroarty ("McGroarty") was the Company's Chief Financial Officer at all relevant times.

16.     Defendants Maccecchini and McGroarty (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

17.     Annovis is a clinical stage pharmaceutical company that is developing therapies addressing neurodegeneration, such as AD, PD, and AD-DS.  Its lead compound is ANVS401 (Posiphen), an orally administrated drug which purportedly inhibited the synthesis of neurotoxic proteins that are the main cause of neurodegeneration.

18.     At all relevant times, the Company was conducting two Phase 2a clinical studies. The ADCS Trial conducted in collaboration with the ADCS examines twenty-four early AD patients, whereas the AD/PD trial examines fourteen AD and fifty-four PD patients.  Both are double-blind, placebo-controlled studies and were purportedly designed to measure not only target, but also pathway validation in the spinal fluid of patients.  Annovis stated that if it could show both target and pathway validation in two patient populations, it "believe[d] that [its] opportunity for successful Phase 3 studies is better than if we merely demonstrated target validation in one patient population."

### Materially False and Misleading Statements Issued During the Class Period

19.     The Class Period begins on May 21, 2021.  On that day, Annovis issued a press release entitled "Annovis Bio Announces Positive Phase 2 Data – ANV401 Improves Cognition in Alzheimer's Disease – Patients' Cognition Improved 3.3 Points on ADAS-COG11."  It stated, in relevant part:

> Annovis Bio Inc. (NYSE American: ANVS), a clinical-stage drug platform company addressing Alzheimer's disease (AD), Parkinson's disease (PD) and other neurodegenerative diseases, today announced new results from a double-blind, placebo-controlled study of ANVS401, its lead drug candidate for the treatment of AD and PD. ***Patients treated with ANVS401 for 25 days showed statistically significant cognitive improvement as measured by the Alzheimer's Disease Assessment Scale–Cognitive Subscale 11*** (ADAS-Cog11). The 11-part test is one

of the most frequently used tests to measure impaired cognition in clinical trials for AD.

Dr. Maria L. Maccecchini, CEO of Annovis Bio, explained: "We previously reported that ANVS401 significantly increased speed, coordination and motor function in PD patients in this trial. We set up this study to measure the toxic cascade leading to nerve cell death and loss of function and its reversal in AD and PD. Since the study was powered to investigate changes in biomarker levels, not to demonstrate efficacy, we believe these results are that much more impactful."

**Efficacy**

From baseline to 25 days in the ANVS401-treated group, ADAS-Cog11 improved by 4.4 points, a statistically significant improvement of 30% (p=0.04).

Additionally, the ANVS401-treated group compared to placebo group at 25 days showed an improvement of 3.3 points, or 22% (p= 0.13).

This is the first double-blind, placebo-controlled study that shows cognitive improvements in AD patients as measured by ADAS-Cog and functional improvements in PD patients as measured by the Unified Parkinson's Disease Rating Scale (UPDRS).

"The results from the first cohort of 14 AD and 14 PD patients, show that the drug is effective in both diseases," stated Dr. Maccecchini. "Seeing efficacy in both patient populations supports our hypothesis that the impairment of axonal transport, the information highway of the nerve cell, affects nerve cells in the same way in both diseases. The toxic cascade in neurodegeneration begins with high levels of neurotoxic proteins, which impair axonal transport, increase inflammation and eventually lead to nerve cell death and permanent loss of cognition and function."

20.    On this news, the Company's stock price surged from its closing price of $26.40 per share on May 20, 2021 to $60 per share on May 21, 2021.

21.    On June 1, 2021, Annovis issued a press release entitled "Annovis Bio's ANVS401 Improves Speed and Accuracy in Alzheimer's and in Parkinson's Patients."  It stated, in relevant part:

Annovis Bio Inc. (NYSE American: ANVS), a clinical-stage drug platform company addressing Alzheimer's disease (AD), Parkinson's disease (PD) and other neurodegenerative diseases, ***today announced the notable finding that in a test that measures speed, AD and PD patients both respond with a statistically significant increase in correctly coded fields after 25 days of treatment with***

*ANVS401. The test was part of the Company's ongoing Phase 2a study in AD and PD patients.*

"Our hypothesis states that neurodegenerative diseases, such as AD and PD have many commonalities and that in both diseases nerve cells die through similar pathways," said Annovis Bio CEO Dr. Maria Maccecchini, PhD. "That is why we designed a double study, where we are measuring the same markers of the toxic cascade in both diseases. We also measured the coding scale of the WAIS test in both patient groups."

**The WAIS Coding Scale measures** visual-motor dexterity, associative nonverbal learning, and nonverbal short-term memory. It measures fine-motor dexterity, speed, accuracy and ability to manipulate a pencil and perceptual organization.

Annovis Bio found that speed and accuracy was increased in both patient populations of its Phase 2a study, whether the comparison was made between the same patients before and after treatment or between the placebo and ANVS401 treated groups at 25 days. These data are from the first 14 AD and the first 14 PD patients in the study.



\* \* \*

7

**PD** - comparison between the treated group with 80 mg/day of ANVS401 at baseline before treatment and after 25 days on treatment and between placebo and treated group at 25 days in the rapid coding test. At 25 days the speed and accuracy of the treated group is faster than at baseline and the patients on average coded 6.1 more correct fields ($p < 0.05$). Also, at 25 days placebo performs worse than drug treated ($p < 0.05$). To summarize the PD results, the two graphs show that while the placebo gets worse, the treated group gets faster.

**AD** - comparison between the treated group with 80 mg/day of ANVS401 at baseline before treatment and after 25 days on treatment and between placebo and treated group at 25 days in the rapid coding test. At 25 days the speed of the treated group is faster than at baseline and the patients on average coded 6.6 more correct fields ($p < 0.05$). Also, at 25 days placebo performs worse than drug treated (trend). To summarize the AD results, the two graphs show that while the placebo gets slightly better, the treated group gets much faster.

"This is one additional piece of information that confirms the data from our Phase 2a study and shows that ANVS401 is efficacious in both AD and PD," said Dr. Maccecchini.

22.     The above statements identified in ¶¶ 19 and 21 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.   Specifically, Defendants failed to disclose to investors: (1) that Annovis's ANVS401 did not show statistically significant results across two patient populations as to factors such as orientation, judgement, and problem solving; and (2) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## The Truth Emerges

23.     On July 28, 2021, Annovis presented at the Alzheimer's Association International Conference ("AAIC") where it presented "new clinical efficacy and biomarker data of its drug ANVS401."  A copy of the Company's presentation was filed as Exhibit 99.1 to a Form 8-K filed with the SEC on July 29, 2021.  Specifically, Annovis included the following slides, showing that

AD patients twenty-five days after treatment failed to show statistically significant improvements compared to the placebo on factors such as orientation, judgment, and problem solving:

## EFFICACY IN AD AND PD PATIENTS – WAIS CODING TEST

**Data from 14 AD and 14 PD patients**



The WAIS coding test measures speed in movement and thinking. Treated AD patients show a 6.6 point and PD patients a 6.1-point improvement in coding after Posiphen treatment.

This is the first double-blind, placebo-controlled study that shows cognitive improvements in AD patients as measured by ADAS-Cog and functional improvements in PD patients as measured by the Unified Parkinson's Disease Rating Scale (UPDRS).

ANNOVIS 10

## EFFICACY IN AD AND PD PATIENTS - MMSE

| MMSE | AD | | PD | |
|------|------|------|------|------|
| | Placebo | Posiphen | Placebo | Posiphen |
| MMSE Baseline | 24.5 | 25.4 | 27.6 | 29.1 |
| 25 Days later | 25.7 | 26.2 | 28.0 | 29.1 |
| Improvement in MMSE | 1.2 | 0.8 | 0.4 | 0.0 |

While there is a positive trend in AD, the changes in MMSE are not statistically significant.

ANNOVIS 11

EFFICACY IN AD PATIENTS – CDR –SUM OF BOXES

| CDR | Placebo | Posiphen |
|---|---|---|
| Improvement  in total score | -1.17 | -0.96 |

In AD patients there are positive trends in orientation, judgement and problem solving, home and hobbies as well as total CDR score, but the data is not statistically significant.

ANNOVIS 12

24.     On this news, the Company's share price fell $65.94, or 60%, to close at $43.50 per share on July 29, 2021, on unusually heavy trading volume.

25.     Then, on July 30, 2021, Annovis issued a press release entitled "Annovis Bio Pleased by Positive Interim Results From Ongoing Phase II Clinical Trials of ANVS401 (Posiphen) for the Treatment of Alzheimer's Disease and Parkinson's Disease."  It stated, in relevant part:

> Annovis Bio, Inc. (NYSE American: ANVS), a clinical-stage drug platform company addressing Alzheimer's disease (AD), Parkinson's disease (PD) and other neurodegenerative diseases, today said it is pleased by the positive interim results released on July 28 from Phase II clinical trials of its lead compound, ANVS401 (Posiphen).
>
> Over the course of the first 25 days of treatment, the initial patient cohorts demonstrated statistically significant positive results in both their cognitive and motor skills. The biomarkers presented and analyzed to date also corroborate the efficacy of ANVS401.
>
> Maria L. Maccecchini, Ph.D., Founder, CEO and President of Annovis Bio, said, "We were pleased to see improvements in cognition and motor skills in only 25 days and are hopeful we will see cumulative and long-lasting positive outcomes from the use of ANVS401 through the remainder of the trials."
>
> Additional results include:

- **AD Patients**: In the ongoing study of ADAS-Cog, the ANVS401-treated group showed improvement in all four ADAS-Cog tests performed compared to the placebo group. Specifically, patients treated with ANVS401 showed a 4.7 point or 30% improvement while the placebo group showed a 1.1 point improvement in ADAS-Cog11. Additionally, the WAIS coding test, which measures speed in movement and thinking, found that treated AD patients had a 6.6 point improvement in coding after ANVS401 treatment. In AD patients there were positive trends in MMSE and total CDR score, but the data was not statistically significant.

- **PD Patients**: In the ongoing study of MDS-UPDRS test, the ANVS401-treated group showed improvement in all four parts of UPDRS test compared to the placebo group. Specifically, PD patients treated with ANVS401 improved 6.2 points (14%) while the placebo group declined 4.2 points. Additionally, the WAIS coding test, which measures speed in movement and thinking, showed that PD patients had a 6.1-point improvement in coding after ANVS401 treatment.

The trial also measured the levels of six neurotoxic aggregating proteins, levels of neurofilament light to show axonal health and of three inflammatory markers that are prevalent in the brains of AD and PD patients. All of the neurotoxic proteins were reduced in AD patients - some reductions were statistically significant, and some were not. Neurofilament light was reduced in both AD and PD patients compared to placebo, although the results were not statistically significant. All of the inflammatory markers showed statistically significant reductions after 25 days of treatment in 14 PD patients. In addition, we determined there was a statistically significant increase in the ratio of $A\beta42/A\beta40$ among AD patients, suggesting that they improved.

The company expects its next clinical data readout in the third quarter and plans to release the outcome of its review of all the biomarkers of the toxic cascade in the coming months.

26.     Then, on August 11, 2021, Annovis filed a Form 8-K with the SEC answering certain frequently asked questions about the reported interim results.  Among other things, Annovis stated that the interim results were "positive."  The Company further stated:

[S]ome initial reporting after our presentation at the AAIC 2021 conference included an error in which the scores of the WAIS test were transposed between placebo and treated PD patients. We have received a number of questions regarding this error and believe it led some people to conclude that the placebo was more effective than treatment with ANVS401, which is incorrect.

27.    Annovis claimed that it "saw statistically significant changes (p<0.05) in ADAS-Cog11, MDS-UPDRS and WAIS, showing efficacy of the drug in AD and PD patents."  However, the Company affirmed its prior statement that Annovis saw "on statistically significant data in the mini mental state examination (MMSE) and clinical dementia rating sum of boxes (CDR), reflecting that the scores were due to random changes in behavior."

28.    Despite the Company's purported explanations, Annovis's stock price has not recovered.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

29.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Annovis securities during the Class Period, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

30.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Annovis's shares actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Annovis shares were traded publicly during the Class Period on the NYSE.  Record owners and other members of the Class may be identified from records maintained by Annovis or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

31.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

32.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

33.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Annovis; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

34.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**UNDISCLOSED ADVERSE FACTS**

35.     The market for Annovis's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures

to disclose, Annovis's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Annovis's securities relying upon the integrity of the market price of the Company's securities and market information relating to Annovis, and have been damaged thereby.

36.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Annovis's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Annovis's business, operations, and prospects as alleged herein.

37.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Annovis's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

38.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

39.     During the Class Period, Plaintiff and the Class purchased Annovis's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

40.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Annovis, their control over, and/or receipt and/or modification of Annovis's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Annovis, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

41.     The market for Annovis's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Annovis's securities traded at artificially inflated prices during the Class Period.  On July

13, 2021, the Company's share price closed at a Class Period high of $120.97 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Annovis's securities and market information relating to Annovis, and have been damaged thereby.

42.     During the Class Period, the artificial inflation of Annovis's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Annovis's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Annovis and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company's shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

43.     At all relevant times, the market for Annovis's securities was an efficient market for the following reasons, among others:

(a)     Annovis shares met the requirements for listing, and were listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Annovis filed periodic public reports with the SEC and/or the NYSE;

(c)     Annovis regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on

the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Annovis was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

44.     As a result of the foregoing, the market for Annovis's securities promptly digested current information regarding Annovis from all publicly available sources and reflected such information in Annovis's share price.  Under these circumstances, all purchasers of Annovis's securities during the Class Period suffered similar injury through their purchase of Annovis's securities at artificially inflated prices and a presumption of reliance applies.

45.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

46.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.   In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Annovis who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

47.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

48.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Annovis's securities at artificially inflated prices.   In

furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

49.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Annovis's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

50.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Annovis's financial well-being and prospects, as specified herein.

51.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Annovis's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Annovis and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

52.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

53.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Annovis's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

54.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Annovis's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trade, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Annovis's securities during the Class Period at artificially high prices and were damaged thereby.

55.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Annovis was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Annovis securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

56.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

57.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

58.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

59.     The Individual Defendants acted as controlling persons of Annovis within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60.     In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

61.     As set forth above, Annovis and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their position as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of

the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.      Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  September 10, 2021

Respectfully submitted,

THE ROSEN LAW FIRM, P.A

*/s/ Jacob A., Goldberg*
Jacob A. Goldberg
Gonen Haklay
101  Greenwood  Avenue,  Suite  440
Jenkintown, Pennsylvania 19046
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
jgoldberg@rosenlegal.com
ghaklay@rosenlegal.com

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)

23

J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*